UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|   |   |
|---|---|
| **DAVID WALLER,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. |
| v. ) | 23-10551-BEM |
| ) | |
| **HAZELETT MARINE, LLC,** ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER ON
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**MURPHY, J.**

This case, like Othello, concerns the failings of a moor. Defendant Hazelett Marine LLC ("Hazelett") has moved for summary judgment. Dkt. 48. For the reasons stated herein, the motion is DENIED.

**I.  Background**

Through the Graves Light & Fog Station LLC ("Lighthouse LLC"), Plaintiff David Waller is partial owner of the Graves Lighthouse ("Graves"), located in Boston Harbor. Dkt. 60-7 at 4; Dkt. 59 ("Opp.") at 1. Waller acquired Graves because he and his wife enjoy restoring historic structures. Dkt. 60 (Plaintiff's Statement of Facts, or "PSOF") ¶ 45.[1] Graves includes a guest cottage, which Waller has used to host friends but has never rented for money. *Id.* ¶¶ 43–44. Waller states that he has never been employed in any maritime- or lighthouse-related industry, *id.* ¶ 70, and that neither he nor the Lighthouse LLC has ever made any money off Graves, *id.* ¶ 75.

---

[1] Unless otherwise noted, citation to the Plaintiff's Statement of Material Facts refers to the facts as admitted or substantially agreed upon by the parties.

On or about February 10, 2020, Waller contacted Hazelett, a mooring manufacturer, inquiring about a mooring system for Graves.[2] PSOF ¶¶ 3–4. Thereafter, Hazelett provided a quote to Waller, *id.* ¶ 4; payment was made through the Lighthouse LLC, *id.* ¶ 49; and Waller implemented Hazelett's product at Graves, *id.* ¶¶ 10–14.[3]

On or about March 13, 2021, Waller's boat was moored at Graves when inclement weather struck. *Id.* ¶¶ 20–21, 48. The boat was initially lost to the storm but washed ashore a few days later. *Id.* ¶¶ 22–23. Waller contends that this resulted in a total loss of the boat and its contents, as well as in other consequential damages. *Id.* ¶ 2.

After the incident, Waller contacted Hazelett and then, on September 28, 2021, sent Hazelett a demand letter. *Id.* ¶¶ 27–28. On March 13, 2023, Waller filed this lawsuit. Dkt. 1. In his Amended Complaint, Waller asserts claims for breach of contract, breach of warranty, and for unfair or deceptive business practices under Mass. Gen. Laws ch. 93A. Dkt. 53-3 (allowed Dkt. 55). On March 17, 2025, Hazelett moved for summary judgment on all claims. Dkt. 48.

## II.   Standard of Review

Summary judgment will only be granted where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Grogan v. All My Sons Bus. Dev. LLC*, 552 F. Supp. 3d 142, 145 (D. Mass. 2021) (quoting Fed. R. Civ. P. 56(a)). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is

---

[2] As used here, a mooring is a device used to secure in place a vessel at sea.

[3] The parties contest the precise characterization of certain facts—for example, whether Hazelett's product comprised a full mooring "system" or merely "parts and components," *see* PSOF ¶ 49, and the extent to which Waller can said be said to have "installed" the product versus just "drop[ping] it in the water," *see id.* ¶ 10. The Court need not and does not intend to settle any of these semantic disputes through its recital of the facts.

"genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "To succeed [on a motion for summary judgment], the moving party must show that there is an absence of evidence to support the nonmoving party's position." *Grogan*, 552 F. Supp. 3d at 145 (quoting *Rogers v. Fair*, 902 F.2d 140, 143 (1st Cir. 1990)) (internal quotations omitted).

## III. Discussion

### A. Breach of Warranty and Contract

Hazelett argues that it disclaimed any implied warranty of merchantability or fitness through its sale documents and that the express warranty applicable to Waller's purchase bars his claims. Dkt. 49 at 6–9. But Hazelett's ability to disclaim the implied warranties is limited by Mass. Gen. Laws. ch. 106 § 2-316A(2), which deems unenforceable any such waiver as to "consumer goods."

"Consumer goods" are defined under the statute as "goods that are used or bought for use primarily for personal, family, or household purposes." Mass. Gen. Laws. ch. 106 § 9-102(23); *see also W.R. Const. & Consulting Inc. v. Jeld-Wen, Inc.*, 2002 WL 31194870, at *9 (D. Mass. Sept. 20, 2002). Products installed as part of the structure of a home have been held to constitute consumer goods. *Id.* (citing cases); *see also, e.g., Egan v. Daikin N. Am., LLC*, 2019 WL 438341, at *5 (D. Mass. Feb. 4, 2019) (finding that HVAC system was a consumer good because the plaintiffs "purchased it to heat and cool their home"). The involvement of an intermediary to purchase goods for a consumer's use does not necessarily defeat the goods' consumer status. *See, e.g., W.R. Const.*, 2002 WL 31194870, at *9; *cf. Baba v. Hewlett Packard Co.*, 2012 WL 5336971, *5 (N.D. Cal. 2012) (applying Massachusetts law and finding that a laptop was "equipment," rather than a consumer good, because it was used primarily for "business purposes").[4]

---

[4] Under these statutes, which reflect Massachusetts's adoption of the Uniform Commercial Code, *see Jacobs v. Yamaha Motor Corp., U.S.A.*, 420 Mass. 323, 327 (1995), consumer goods are defined in contradistinction

Waller has raised, at least, a genuine issue of material fact as to whether the Hazelett product was purchased "primarily for personal, family, or household purposes," Mass. Gen. Laws. ch. 106 § 9-102(23). *See Kazmaier v. Connelly*, 1994 WL 879527, at *1 (Mass. Super. June 8, 1994) ("The primary use of a good is a question of a fact to be determined by a jury.") (denying summary judgment). Hazelett does not suggest that Waller has ever tried to make money from Graves.[5] *See* PSOF ¶¶ 42–43. It is thus hard to say that improvements to Graves were for "business purposes." *Cf. Baba*, 2012 WL 5336971 at *5. Insofar as Graves is essentially a vacation home for Waller, his wife, and their guests, one might analogize the mooring to a driveway or any other home improvement. *See Egan*, 2019 WL 438341, at *5.

Because Hazelett cannot show that its purported waiver is enforceable, the Court must deny summary judgment on the warranty and contract claims.[6]

### B.    Ch. 93A

Hazelett makes two somewhat-related arguments regarding Waller's claim under Mass. Gen. Laws. ch. 93A ("93A"), failing in tandem.

First, Hazelett argues that Waller's purchase is best understood as a "commercial" transaction, rather than as a "purely personal" one, and is therefore not protected by the statute. Dkt. 49 at 9–11. This argument misunderstands 93A and fails accordingly. Claims under 93A do not need to "arise out of 'trade or commerce' involving a consumer good." *Id.* at 9. Nor does a transaction need to be "purely personal" to receive protection. *Id.* Rather 93A provides *different*

---

with "equipment," which are "goods other than inventory, farm products, or consumer goods." Mass. Gen. Laws. ch. 106 § 9-102(33).

[5] The closest Hazelett gets is the fact that Waller apparently once appeared on television with the lighthouse. PSOF ¶ 45.

[6] Because the claims survive, the Court need not and does not reach the other contract- and warranty-related issues.

causes of action for "consumer" versus "business" claims. *Frullo v. Landenberger*, 61 Mass. App. Ct. 814, 820–21 (2004) (explaining the difference between a 93A consumer claim under § 9 versus business claims under § 11). Within this framework, Hazelett appears to argue that Waller's should be understood as a business claim under 93A § 11.[7]

This position defeats Hazelett's second argument, that Waller failed to satisfy the technical requirements for a 93A demand letter, *id.* at 11–12. A demand letter is required only for consumer claims under 93A, § 9. *See Frullo*, 61 Mass. App. Ct. at 816 n.4. Accordingly, Hazelett's own argument as to the nature of the transaction precludes this Court from finding that Waller's claim necessarily arises under 93A, § 9, as would be required to consider Hazelett's motion based on the demand letter.[8]

## IV.     Conclusion

For the foregoing reasons, Defendant's motion for summary judgment is DENIED.

**So Ordered.**

|  |  |
|---|---|
| Dated: April 18, 2025 | /s/ Brian E. Murphy<br>Brian E. Murphy<br>Judge, United States District Court |

---

[7] The Court does not and need not resolve whether Hazelett's claim arises under 93A §§ 9 or 11. *See Giuffrida v. High Country Inv., Inc.*, 73 Mass. App. Ct. 225, 236–37 (2008) (on appeal from summary judgment, determining that 93A claim arose under § 11, notwithstanding the plaintiffs' having sent a demand letter asserting a claim under § 9 and notwithstanding that the plaintiffs' "personal interests . . . were also implicated").

[8] Accordingly, the Court does not reach any of Hazelett's substantive arguments concerning the demand letter.